# In the United States Court of Federal Claims

| | |
|---|---|
| VECTRUS FEDERAL SERVICES GMBH,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant,<br>and<br>PAE APPLIED TECHNOLOGIES LLC,<br>Defendant-Intervenor. | No. 26-175<br>Issued under seal August 3, 2026<br>Reissued publicly August 18, 2026 |

Adam K. Lasky, Seyfarth Shaw LLP, Seattle, Washington, for plaintiff.
Yariv S. Pierce, Civil Division, United States Department of Justice, Washington, DC; John C. Degnan, Contract Litigation & Intellectual Property Division, U.S. Army Legal Services Agency; and Gregory A. Moritz, 409th Contracting Support Brigade, U.S. Army Contracting Command, for defendant.
Robert J. Sneckenberg and William B. O'Reilly, Crowell & Moring LLP, Washington, DC, for defendant-intervenor.

**OPINION AND ORDER**
**Denying Vectrus's motion for judgment on the administrative record and granting the government's and intervenor's cross-motions for judgment on the administrative record**

Plaintiff Vectrus protests the Army's decision awarding PAE a contract for maintaining a base in Germany.[1] Vectrus alleges that the Army acted unreasonably in reviewing PAE's past projects and misled Vectrus in pre-award discussions. Vectrus moves for judgment on the administrative record and for a permanent injunction prohibiting the Army from moving forward with

[1] This opinion was originally issued under seal on August 3, 2026. The parties filed a joint proposal for redactions. ECF No. 64. In that proposal, the parties also requested additions to the counsel listed at the top of the opinion. *Id.* The court reissues this public opinion accepting the proposed redactions and adding the requested counsel's names. The substance of the opinion is unchanged.

the contract with PAE. The government and PAE cross-move for judgment on the administrative record.

At bottom, the Army did not act arbitrarily, capriciously, or contrary to law during its evaluation process. Thus, the government and PAE are entitled to judgment on the administrative record.

## I. Background

In 2020, the Army issued a solicitation for a contract covering maintenance and facility operations on the United States Army Garrison Rheinland Pfalz base located in Germany. AR3034-35; AR3038.[2] The solicitation aimed to consolidate two facility maintenance contracts for the base to improve efficiency and lower costs for the government; Vectrus was the incumbent contractor under one of the pre-consolidation contracts. AR1654-55; AR1658. The selected proposal would receive a non-commercial indefinite-delivery indefinite-quantity contract with an order ceiling of $375 million and an ordering period of five years after the contract award. AR33949; AR33985. The solicitation was amended nineteen times. AR33922 (amendment 19).

### A. The solicitation outlines evaluation factors and how an awardee will be chosen

The final version of the solicitation explains that proposals will be evaluated under three factors: a technical factor, a price factor, and a past performance factor. AR34076. The three factors are weighed differently, with the technical factor being the most important, followed by the price factor, and finally the past performance factor. *Id.* The technical and past performance factors

[2] The parties submitted an administrative record to the court and also submitted a joint appendix to the court, but they did not file either through ECF. *See* ECF No. 54. The court will cite the administrative record with the designation AR. The parties will eventually file the complete administrative record either through ECF or separately with the clerk's office. *See* Rules of the Court of Federal Claims, Appendix C, Paragraph 28.

combined outweigh price. *Id.* The contract will be awarded to the "offeror whose proposal represents the overall best value to the Government." *Id.* Thus, "the Government may award to other than the lowest price or highest rated technical proposal." *Id.*

The technical factor has subfactors, one of which is experience. AR34076. Both the experience subfactor and the past performance factor require offerors to submit past or current projects. AR34070-85. An offeror may submit projects performed by a corporate affiliate. AR34083 (expressly defining "offeror" as including an "affiliate / subsidiary / parent company" under the past performance factor); AR30385 (clarifying through pre-offer questions and answers that corporate affiliate experience may be utilized for the experience subfactor). During pre-offer questions and answers, the Army clarified that if an offeror chooses to submit a project that represents the past performance or experience of a corporate affiliate, the offeror must demonstrate: (1) "that the affiliate / subsidiary / parent company will have meaningful involvement in contract performance" and (2) "how the affiliate / subsidiary / parent company's experience or past performance relates to the work it will perform, or the resources it will provide, during contract performance." AR30385. The government also clarified that for submissions describing a joint venture project, "the Government will only consider the value of the offeror's own effort … as a part of a Joint Venture, to determine the relevant size of the contract / project / subcontract submitted by the offeror." AR6460.

The solicitation also lists key personnel roles and those roles' required qualifications. Several of those roles require German language fluency. AR31723-26; AR45776-78 (final contract). Two of those roles did not require German language fluency until after the solicitation's fourteenth amendment, in 2024. AR31592 (amendment 14 memorandum from 2024); *see* AR3314 (the preventive maintenance coordinator / alternate role required only English before 2024); AR3316 (the

general fund enterprise business system (AR45464) specialist role required only English before 2024). To show German language fluency and other required qualifications under the final solicitation, the awardee must "provide objective evidence of key personnel qualifications and years of experience to the [contracting officer], no later than thirty (30) calendar days before the contract start date, for review and acceptance." AR3060 (paragraph 21.11.1.4); AR45395 (same).

A source selection plan, written before the solicitation was issued, explains the solicitation process and outlines the procedures for all members of the government involved in the procurement. AR295-332. A source selection authority ultimately determines which offeror provides the best value. AR320 (explaining that the source selection authority is "the individual designated to make the best-value decision"). That person makes the determination informed by comparative evaluations from a source selection advisory council. AR322. The advisory council receives information from a source selection evaluation board (AR323-24), which conducts an initial review of proposals compared to solicitation requirements (AR328-29).

After proposal evaluations, but before the source selection authority's decision, the contracting officer serves as the point of contact for inquiries from offerors and determines whether the government wants to undertake discussions with offerors in the competitive range. AR321-22; AR328-29. If the contracting officer conducts discussions with offerors, the contracting officer documents any new information from offerors in a supplemental evaluation report, and the contracting officer can revise the competitive range with the approval of the source selection authority. AR329. Offerors still within the competitive range may then submit final proposal revisions, culminating in a final evaluation report for the source selection advisory council and source selection authority to consider. *Id.*; *see* AR44982-85 (source selection evaluation board memorandum for source selection advisory council).

### B. The Army made an award, Vectrus filed a post-award protest with the Government Accountability Office, and the Army took corrective action

In February 2022, the Army awarded the contract to PAE. AR25546. The source selection authority explained in her decision how PAE's proposal compared to the other proposals in the competitive range and why it presented the best value among the proposals the government had received. AR25548-50. Four offerors were in the competitive range at that point: [redacted], [redacted], PAE, and Vectrus. AR25546-47.

Vectrus filed a post-award protest with the Government Accountability Office, alleging bias in the source selection. AR27134. The Government Accountability Office dismissed the protest after the Army agreed to take corrective action. AR28114-15. The Army cancelled the award to PAE (AR29048-50) and informed each of the four competitive offerors that it would (1) issue an amended solicitation; (2) conduct open discussions with them; (3) appoint a new evaluation team; and (4) make a new best-value determination and award decision. AR29033-34; AR29039-40; AR29036-37; AR29051; AR29041-42. In response, [redacted] informed the government that it and PAE had both been acquired by Amentum. AR29311. Because of the acquisition, [redacted] withdrew its proposal and chose to move forward with a "consolidated proposal" by PAE. *Id.* [redacted], PAE, and Vectrus all updated their proposals. AR35362-63; AR34519-20; AR35856-57; AR35970-71.

The Army documented its review of the proposals (AR37150-51) and the source selection authority decided to conduct a new round of discussions with the offerors (AR37315). The Army conducted two more rounds of discussions, during which it sent each offeror a spreadsheet evaluating the technical factors. *See, e.g.*, AR37370 (pdf of the evaluation notices for PAE round 5); AR37825 (pdf of the evaluation notices for [redacted] round 5); AR38256 (pdf of the evaluation notices for Vectrus round 5). The spreadsheet rated each technical factor on a relative strength scale, giving

information on how the offeror could improve. *See id.* The Army closed discussions on June 10, 2025 (*e.g.*, AR43560-61), and all three remaining offerors submitted final proposals (AR43937 (Vectrus); AR44494 (PAE); AR44496 ([redacted])).

**C. The Army decided that PAE's offer provided the best value for the government**

The source selection evaluation board submitted its final evaluation to the source selection advisory council (AR44982; AR44991), and the advisory council performed its trade-off analysis between the offerors (AR47639-60). The advisory council determined that Vectrus's proposal was superior to PAE's under the technical factor (AR47648-49) but that PAE's was superior to Vectrus's under the past performance factor due to its "significantly more extensive performance record" (AR47651). PAE's proposal was 10.27% cheaper than Vectrus's proposal. AR47652. The advisory council noted that Vectrus's proposal was superior when considering both non-price factors, but "the technical advantages offered by Vectrus do not warrant the additional cost." *Id.* The advisory council determined that PAE's proposal offered the best value. *Id.* The advisory council gave that recommendation to the source selection authority, who concurred. AR47664-66. The source selection authority decided to award the contract to PAE. AR47661. The source selection authority noted that "even assuming I did not have more confidence in PAE under the Past Performance Factor as compared to Vectrus, I would still determine the proposal from PAE to be the better value." AR47665. The Army awarded the contract to PAE in December 2025. AR45194.

This table shows the Army's final evaluations of PAE and Vectrus under the technical and past performance factors:

| Factor | Subfactor | PAE | Vectrus |
|---|---|---|---|
| Technical | Subfactor 1a – Management plan | Outstanding | Outstanding |
| | Subfactor 1b – Experience | Outstanding | Good |
| | Subfactor 1c – Phase-in / Phase-out plan | Outstanding | Outstanding |
| | Subfactor 1d – Subcontracting plan | Good | Good |
| | Overall Technical Rating | Outstanding | Outstanding |
| Past Performance | N/A | Substantial Confidence | Substantial Confidence |

AR45190; *see also* AR47639 (same).

### D. Vectrus protested the award in this court

In February 2026, Vectrus filed a protest in this court requesting declaratory relief and a permanent injunction. ECF No. 40 at 3 [¶8], 47 [¶¶112-113] (amended complaint); *see* ECF No. 1. PAE intervened. ECF No. 9.

Vectrus now moves for judgment on the administrative record (ECF No. 32), and the government and PAE cross-move (ECF Nos. 41, 43). Vectrus also moves, unopposed, for the court to take judicial notice of some publicly available records (ECF No. 35), and PAE moves, unopposed, to supplement the administrative record (ECF No. 42). The court held a hearing on the pending motions.

## II. Discussion

Vectrus challenges the award to PAE on four grounds: (1) that the Army unreasonably gave PAE credit for past projects performed by its corporate affiliates, not by PAE; (2) that the Army improperly credited PAE for a project in Guam in which it was a joint venture member; (3) that PAE never intended to meet the solicitation's German fluency requirements; and (4) that the Army engaged in misleading discussions with Vectrus. ECF No. 32 at 1-2; ECF No. 48 at 1, 12,

15, 22. Vectrus initially included an additional argument disputing whether PAE was a member in the joint venture that performed the Guam project (ECF No. 32 at 1 (Count II)) but later withdrew the argument (ECF No. 48 at 1).

This court's jurisdiction is primarily defined by the Tucker Act, which provides the court with "jurisdiction to render judgment … in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b). The court can grant "any relief that the court considers proper, including declaratory and injunctive relief." *Id*. To decide a motion for judgment on the administrative record, the court must determine whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *Palantir USG, Inc. v. United States*, 904 F.3d 980, 989 (Fed. Cir. 2018) (quotation marks omitted). When parties cross-move for judgment on the administrative record, each party must prove its own case to succeed. *See Mendez v. United States*, 103 Fed. Cl. 370, 378-84 (2012) (ruling on cross-motions for judgment on the administrative record after evaluating the plaintiff's and the government's arguments in turn against the administrative record).

The court "review[s] the agency's decision pursuant to ... the standards found in the Administrative Procedure Act" (APA), 5 U.S.C. § 706. *Banknote Corp. of America v. United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004). "Among the various APA standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*. at 1350-51 (cleaned up).

The court determines "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Mitchco International, Inc. v. United States*, 26 F.4th

1373, 1384 (Fed. Cir. 2022) (quotation marks omitted). "Contracting officers are given broad discretion in their evaluation of bids," and a court may not substitute its judgment for the agency's reasonable decision. *DynCorp International, LLC v. United States*, 10 F.4th 1300, 1311 (Fed. Cir. 2021). A protester "bears a heavy burden." *AgustaWestland North America, Inc. v. United States*, 880 F.3d 1326, 1332 (Fed. Cir. 2018) (quotation marks omitted). A protester must demonstrate "a clear and prejudicial violation of applicable statutes or regulations." *Banknote*, 365 F.3d at 1351 (quotation marks omitted). In other words, even if the court finds that the agency acted arbitrarily or capriciously, a protester is entitled to relief only if it "was prejudiced by that conduct." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (quotation marks omitted). A protester can establish prejudice only by showing "that there was a substantial chance it would have received the contract award" if not for the agency's error. *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (quotation marks omitted).

### A. The government reasonably credited PAE for its past projects performed by corporate affiliates

Vectrus argues that the government unreasonably credited PAE for past projects performed by its affiliates Amentum and DynCorp. ECF No. 32 at 7-9, 18-25; ECF No. 48 at 1-11; *see* AR47576-78 (post-award debrief to PAE showing credit for projects performed by affiliates); AR47644-45 (source selection advisory council crediting experience performed by PAE in its comparative analysis). Beyond the usual deference for procurement decisions, the Federal Circuit has recognized that "the evaluation of past performance is a matter within the discretion of the contracting agency and that the agency's reasonable interpretation of the facts is entitled to considerable deference." *Taahut v. United States*, 849 F. App'x 260, 266 (Fed. Cir. 2021) (quotation marks omitted). The "court must especially defer to the agency's … past performance ratings" because those ratings "involve discretionary determinations of procurement officials." *American*

*Auto Logistics, LP v. United States*, 117 Fed. Cl. 137, 186 (2014) (marks omitted), *aff'd*, 599 F. App'x 958 (Fed. Cir. 2015).

In general, an agency may "attribute the experience or past performance of a parent or affiliated company to an offeror where the [offeror's] proposal demonstrates that the resources of the parent or affiliated company will affect the performance of the offeror." *Femme Comp Inc. v. United States*, 83 Fed. Cl. 704, 746 (2008) (quotation marks omitted). That, "in fact, is encouraged." *Sterling Medical Associates, Inc. v. United States*, 177 Fed. Cl. 550, 570 (2025). But the offeror must make more than "[v]ague or general references" to the affiliate's participation. *ASRC Federal Infrastructure Support, LLC v. United States*, No. 26-451, 2026 WL 1021231, at *7 (Fed. Cl. Apr. 3, 2026).

For this particular solicitation, the solicitation itself noted that "'Offeror' refers to the proposed prime contractor, joint venture entity, affiliate / subsidiary / parent company, and all major subcontractors." AR34083. In response to a question from an offeror, the Army noted that, to receive credit for an affiliate's performance, (1) an offeror would have to show that the affiliate would have "meaningful involvement" in contract performance, and (2) "[t]he offeror must also demonstrate how the affiliate / subsidiary / parent company's experience or past performance relates to the work it will perform, or the resources it will provide." AR30385. Questions and answers can be "controlling" on the agency in certain circumstances. *Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1311 (Fed. Cir. 2016) (noting that questions and answers can be controlling when incorporated into the final solicitation). Here, the parties appear to agree that the question and answer were binding.

PAE's proposal included six past projects a corporate affiliate performed. AR43825; AR43833; AR43841; AR43849; AR43863; AR43876; *see* AR43741 (technical volume listing past

projects for the experience subfactor). To the extent that the solicitation required it, the Army reasonably concluded that PAE's proposal met both requirements.

### 1. The Army reasonably determined that PAE's affiliates would have meaningful involvement

PAE's proposal introduced the company as "One Amentum," with all affiliated companies falling under "common management, control, policies, procedures, and financial systems." AR43822. One Amentum included the combined resources of PAE and DynCorp. AR34535. The proposal notes that One Amentum "created one of the largest providers of mission critical support services to government customers … with 44,000 employees supporting operations in 85 countries around the world." *Id.* PAE had "access to all of Amentum's existing assets, equipment, facilities, key personnel, knowledge, past performance experience, expertise, and capabilities." *Id.* The proposal also explained that PAE's offer provided access to "a [European-command]-based capability of approximately 1,200 staff experienced in maintenance, supply, transportation, and Army logistics analysis that can temporarily augment critical requirements that may emerge in execution." AR43822 (past performance narrative introduction).

In evaluating PAE's proposal, the source selection evaluation board noted which project was performed by which corporate affiliate. *See* AR45019-34 (noting when an affiliate performed a project). The source selection evaluation board noted that PAE had demonstrated "meaningful involvement in [its] team approach and utilization of Amentum umbrella assets." AR45019. The Army reasonably considered the contribution potential of PAE's affiliates and documented its rationale.

Vectrus argues that PAE's proposal improperly relied on vague and general statements about affiliation to demonstrate meaningful involvement of its corporate affiliates. *See* ECF No. 32 at 19-22. Vectrus relies on this court's recent articulations of meaningful affiliate involvement

in *Noblis MSD, LLC v. United States*, 180 Fed. Cl. 667, 705-06 (2026), and *ASRC*, 2026 WL 1021231, at *7-9, to allege that the Army abused its discretion.

But in both *Noblis* and *ASRC*, the offeror was hiding that the performing party was an affiliate rather than the offeror itself. In *Noblis*, the plaintiff asserted that the awardee's proposal "deliberately obscure[d] the performing party when discussing [the awardee's parent company's] contract references." *Noblis*, 180 Fed. Cl. at 694. This court determined that the proposal "failed to provide a factual basis sufficient for the [agency] to attribute" the affiliate's work to that of the offeror. *Id.* at 705. The court also noted that the government did not distinguish between the offeror and its affiliate in evaluations. *Id.* at 703-04. Together, those issues cast serious doubt on if, and how, the affiliate would contribute to the contract. *Id.* at 705-06. Likewise, in *ASRC*, 2026 WL 1021231, at *6-9, the court noted that the awardee stated that it performed six past projects, when an affiliate actually performed each one, and determined that the proposal did not provide the agency "with enough information to allow for informed judgment."

Here, PAE noted which affiliate performed each past project PAE submitted. *See* AR43825; AR43833; AR43841; AR43849; AR43863; AR43876. The Army also noted which affiliate corresponded to each past project. *See, e.g.*, AR45020-25; AR47650. Under those facts, there is no concern that PAE is obscuring which affiliate performed which task, and there is no concern that the Army was confused.

Vectrus gives two reasons why the Army should not have credited PAE's European-Command-based staffers. ECF No. 48 at 3-8. First, Vectrus alleges that the Army could not tell which affiliate a staffer might come from. *Id.* at 4. Second, Vectrus argues that the staffers are not connected to any of the affiliate projects submitted by PAE. *Id.* at 5-7.

On the first point, PAE explained that the staffers would come from Amentum, DynCorp, and PAE. AR43822. That was sufficient for the Army to determine, to its satisfaction, the source of the staffers. On the second point, the solicitation does not require PAE to identify the staffers and whether they participated in each past project PAE submitted. The solicitation only requires, and PAE submitted, verification of each affiliate's meaningful involvement in the current proposal. *See* AR30385; *Sterling Medical*, 177 Fed. Cl. at 570 (noting that "it would create a heavy burden" for the agency or offeror to verify all individual contractor involvement). Vectrus argues that the European-Command-based staffers cannot be relevant because PAE's past projects were performed in regions other than Europe. ECF No. 48 at 6-8. But there is no reason for the Army to conclude that the Europe-based staffers would not bring experience useful to performance of the contract, particularly because the contract will be performed in Germany. The Army is entitled to deference for its consideration of that proposal element and reasonably determined that the affiliates would have meaningful involvement.

**2. To the extent that the solicitation required it, the Army reasonably determined that PAE's affiliates' past projects were related to the work each affiliate would perform or the resources it would provide**

The second condition for receiving affiliate project credit, given during questions and answers, gives offerors two ways to show how a past project relates to the contract work. *See* AR30385 (Q&A 245). To the extent that the condition was incorporated into the solicitation, this court has determined that an affiliate was sufficiently committed to contract performance upon a showing that resources, technology tools, company policies, business processes, and personnel would flow from the affiliate to the proposed contractor. *Ahtna Logistics, LLC v. United States*, 163 Fed. Cl. 488, 513-14 (2022).

Because the contract at issue involves maintaining a government facility (AR3038), PAE's proposal gave examples of affiliate experience relating to maintenance contracts. *See, e.g.*, AR43834-40 (DynCorp contract for the operation of "54 geographically dispersed locations" on "a full-spectrum base life support and sustainment services effort" in [redacted]); AR43841-46 (DynCorp contract for base operation support on [redacted] consisting of maintenance, operation, and repair of facility structures); AR43863-68 (DynCorp contract for war reserve materiel in "asset storage, maintenance, outload, reconstitution, and contingency logistics support"); AR43849-53 (Amentum contract for base operation support for multiple Air Force sites).

PAE's narrative descriptions of past projects showed specific services each affiliate provided that were like those it will provide for the current contract. For example, the [redacted] contract entailed "stabilizing the power generation capabilities …, unclogging the main municipal sewage system, repairing electrical and lighting fixtures, and servicing 200 air conditioning units." AR43835; *see also* AR43842 ([redacted] contract included maintenance and repair of 997 buildings); AR43850 (Air Force sites contract included functional services like "engineering, logistics, power distribution, Heating Ventilation and Air Conditioning"); AR43866 (reserve materiel contract involved management and maintenance of 293 facilities). This solicitation likewise requires "Facility Maintenance (Buildings and Structures); Grounds Maintenance (Improved and unimproved); Utilities (Switch Gear, Transformer Stations, Utility Meters, Storm Drains, Sewage Lifting Systems); … Heating and Cooling Services; Water Services; Waste Water Services; [and] Facility Engineering Management Services." AR3038; AR45371 (same). The Army's analysis reflects that it considered those experiences relevant for the contract; affiliate projects were "relevant in scope and magnitude" or "involved essentially the same scope" in comparison to this contract. *See* AR45021-25 (source selection evaluation board's evaluation noting PAE's tasks performed in

a past project and noting that the project was similar in scope to the contract's proposed work); *see also* AR44993, Tab 704b (provided to the court as a spreadsheet, sheet 1b, column R, "FPR Findings Narrative," providing analysis under the experience factor). The Army reasonably evaluated the proposal with sufficient information to determine that the relevant affiliate would impact performance of each task. *See Femme Comp Inc.*, 83 Fed. Cl. at 747.

Vectrus argues that an offeror must show that it will use specific resources from a particular affiliate to receive credit. ECF No. 32 at 19; ECF No. 48 at 2-5. Vectrus again relies on *Noblis.* ECF No. 32 at 20-22; ECF No. 48 at 2-3. But unlike in *Noblis*, here, each offeror can show relevance of affiliate projects either based on (a) the work it would perform or (b) the resources it would provide in contract performance. AR30385. As just discussed, PAE demonstrated how the past projects relate to the work the affiliates were proposing to perform. PAE did not need to match each specific resource to each specific contract requirement.

Vectrus also is concerned that the Army relied upon the same information to meet the general experience / past performance criteria (found in section M) and condition two of the question and answer. ECF No. 48 at 8-11. Section M establishes size and scope thresholds for past projects. AR34067, AR34076; AR34080. Vectrus argues that the Army's findings address only section M and not condition two. *See* ECF No. 48 at 10-11. But the Army may consider the same information more than once when it is relevant on multiple fronts. *American Auto Logistics, LP*, 117 Fed. Cl. at 186. Vectrus has not shown that the Army acted outside its considerable discretion.

### 3. Any error in the Army's evaluation of PAE's past performance would be harmless

Even if the Army erred in its evaluation of PAE's past performance, any error in that evaluation would be harmless. The Army documented its overall best-value decision and considered the tradeoffs between proposals. *See* AR47664-65. The source selection authority, who had the

last word in making a best-value determination, stated that even without a past performance rating superior to Vectrus's, PAE would have received the award because it provided the better value to the government. *Id.* ("Further, even assuming I did not have more confidence in PAE under the Past Performance Factor as compared to Vectrus, I would still determine the proposal from PAE to be the better value."); *see also* AR47651-52 (source selection advisory council stating the same conclusion). "The Court will not disturb a best-value award so long as the agency documents its final award decision and includes the rationale for any business judgments and tradeoffs made." *Afghan American Army Services Corp. v. United States*, 90 Fed. Cl. 341, 360 (2009) (quotation marks omitted). Thus, even if PAE's past projects could not have received credit, the source selection authority showed that PAE would nevertheless have received the award.

**B. The Army reasonably credited PAE for its work on the Guam project**

Vectrus next argues that the Army unreasonably gave PAE credit for performance of the Guam project. The Guam project was performed by a joint venture called DZSP 21 LLC (DZSP). ECF No. 32 at 29-30; AR43825-26. The solicitation requires that each past project be worth more than $30 million. AR34067. For a past project to be considered "very relevant," the size of the contract must exceed $40 million. AR34080. Although the DZSP past project was worth more than $40 million (*see* AR43827), Vectrus argues that PAE's share of that project was worth less.

DZSP began as a joint venture between PAE Aviation and Technical Services LLC and Parsons Government Services Inc. AR43825; ECF No. 32 at 11; ECF No. 41 at 19. PAE later acquired the Parsons interest in DZSP. AR43825. In 2022, Amentum purchased PAE and all PAE affiliated companies, including DZSP. *Id.* Vectrus argues that because DZSP is a joint venture, the government did not properly assess whether the Guam project met the solicitation's size requirement.

Vectrus's argument against the Guam project narrowed as briefing progressed. Vectrus initially disputed the Army's evaluation of the Guam project's total value. *See* ECF No. 32 at 28-29. After PAE's response (ECF No. 41 at 22), Vectrus accepted that the total value of the Guam project was estimated at around $53 million (ECF No. 48 at 12). Vectrus now argues that PAE should have received credit for the Guam project only equal to what it performed as part of the joint venture. *Id.*

Vectrus argues that the Army failed to evaluate the value of PAE's effort within the total effort of the joint venture, in violation of the solicitation. ECF No. 48 at 12; *see* AR6460 (Q&A 18); AR45020 (Army evaluation listing the Guam project as performed by "Prime/JV, PAE/DZSP 21"). PAE responds that DZSP is owned by PAE's corporate affiliates and was appropriately credited by the Army as affiliate experience. ECF No. 50 at 11-12. The government agrees that its evaluation appropriately credited the Guam project as affiliate experience because the DZSP joint venture is wholly owned by Amentum. ECF No. 51 at 7.

The Army reasonably credited PAE with the Guam project's entire value. PAE's proposal established that the DZSP joint venture was fully owned by Amentum (AR43825), and the Guam project was performed by DZSP (AR43742; AR43825). PAE's proposal described DZSP as "a wholly owned Amentum company." AR43825. The government reasonably considered the Guam project for its whole value based on PAE's proposal materials.

Vectrus also takes issue with the fact that PAE did not always explicitly state, throughout the record, that the Guam project was affiliate experience. ECF No. 48 at 13. But PAE's discussion of its experience made clear that it had performed in conjunction with affiliates, even if the exact term "affiliate" was not part of the narrative description. *See* AR43742 (describing the structure of

the DZSP joint venture); AR43825 (describing DZSP as a "now wholly owned Amentum company").

Vectrus argues that the Army must have evaluated the Guam project as joint venture performance because the Army listed the project as completed by "Prime/JV, PAE/DZSP 21" on an evaluation page (AR45020). ECF No. 48 at 13. But regardless of how it was evaluated, PAE had informed the Army that Amentum was the owner of the entire joint venture and is entitled to credit for the work of the joint venture.

Finally, as already noted (part II.A.3), any error in the Army's evaluation of PAE's past projects would be harmless, as the Army's determination would have been the same even absent PAE's past project experience.

### C. The Army reasonably concluded that PAE would meet the solicitation's language requirements

Vectrus next argues that PAE's proposal was unacceptable because it did not comply with the German language requirement for key personnel. ECF No. 32 at 33; ECF No. 48 at 15-16. PAE's proposal stated "German N/A" under several candidates for key personnel positions (AR43806-07; AR43810), and PAE represented proposed staff members as "Native English" (AR43660; AR43662). Because those employees were required to have German fluency under the solicitation (AR31723-26; AR45776-78), Vectrus alleges that the Army's decision awarding PAE the contract was arbitrary and capricious. ECF No. 32 at 35.

The government responds that PAE's proposal conformed to the solicitation's requirements and that the language requirement was a post-award matter. ECF No. 43 at 20-22; ECF No. 51 at 10. PAE agrees with the government that the language requirement is a matter of contract administration (ECF No. 50 at 13-14) and adds that its proposal "unequivocally confirmed that it would meet all post-award key personnel qualification requirements" (ECF No. 41 at 27).

An agency is entitled to rely on an offeror's certification that it meets the requirements of a solicitation "in determining whether to accept" a proposal, while the "offeror's potential failure to comply with the … requirements is ordinarily a matter of contract administration." *Allied Technology Group, Inc. v. United States*, 649 F.3d 1320, 1330 (Fed. Cir. 2011) (marks omitted). An issue relating to contract administration cannot be the subject of a bid protest. *Id.*; *Brandt Development v. United States*, 177 Fed. Cl. 353, 360 (2025) ("Disputes about contract performance after the close of procurement relate to contract administration, not procurement.").

The solicitation includes a post-award timeline for when the Army would evaluate German language skills. The solicitation states that the "language qualification will not be evaluated and [is] a post-award requirement." AR33928; AR33941. The contractor is required to provide "objective evidence of key personnel qualifications … no later than (30) calendar days before the contract start date, for review." AR3060; AR45395 (same). Thus, the Army was not planning to evaluate language requirements during proposal evaluation.

Vectrus does not argue that an offeror needed to submit proposed personnel to meet the solicitation's requirements. ECF No. 48 at 18 (Vectrus "does not contend that the Solicitation required proposals to identify proposed personnel for these positions, nor to affirmatively state their German fluency, to be acceptable.").[3] Instead, Vectrus argues that PAE showed that it would not comply with the requirement or at least was ambiguous about whether it intended to comply. ECF No. 32 at 34-35; ECF No. 48 at 17-19. Although a procurement officer can rely on an offeror's certification that it will meet proposal requirements, an exception to that rule exists if the proposal,

[3] Vectrus's proposal indicates that it understood that language qualifications were a post-award requirement. Vectrus did not propose personnel at all for the key personnel positions with a German language requirement. *See* ECF No. 41 at 22-23 (PAE noting that Vectrus did not include proposed personnel in its proposal).

on its face, "should lead an agency to the conclusion that an offeror could not and would not comply" with a solicitation requirement. *Allied Technology*, 649 F.3d at 1330. The officer should reject the proposal if there is "significant countervailing evidence" that creates "doubt whether the offeror will or can comply" with a solicitation's requirement. *Id.* at 1331 (citation omitted).

Here, there is no "significant countervailing evidence" suggesting that PAE will not comply with the post-award language requirement. *See Allied Technology*, 649 F.3d at 1331. PAE's proposal provided ample information for the Army to conclude that PAE would meet the post-award language requirement. PAE noted in its proposal that "[a]ll our personnel are bi-lingual and will be tested during in-phase to document fluency." AR43659. PAE also committed to [redacted] *Id.* The Army reasonably concluded that PAE would comply with the language requirement for key personnel. *See Per Aarsleff A/S*, 829 F.3d at 1315 (finding that the Air Force did not act arbitrarily when it declined to evaluate a performance requirement "as a condition of eligibility" and there was evidence that the offeror intended to comply with the performance requirement).

Nor was PAE's proposal inconsistent about its intention to fulfill the German language requirement. It is not inconsistent for PAE to list language qualifications as "German N/A" or "Native English" (AR43806-7; AR43810; AR43660; AR43662) and also commit to [redacted] to ensure compliance (AR43659). PAE's proposal indicated that it would ensure language proficiency at the time of evaluation. As the government notes, PAE's language commitment meant that a proposed key staffer who lacked necessary language skills could gain those skills. ECF No. 43 at 21-22. The Army reasonably relied on PAE's plan for language skill compliance.

### D. The Army did not engage in misleading discussions with Vectrus

Vectrus next alleges that the Army misled Vectrus in pre-award discussions. ECF No. 32 at 15-17, 36. During pre-award discussions, the Army sent each offeror a set of evaluation notices, on a spreadsheet, with each element of the proposal rated on a relative strength scale. *See, e.g.*, AR37358; AR38242; AR38256. An element could rate as a deficiency, weakness, uncertainty, or strength, and the Army placed a narrative finding in the corresponding column. AR38256. For example, evaluation notice 5041 rated Vectrus's proposal for managing multiple work locations as a "deficiency" and provided a narrative explanation in the "deficiency" column of the spreadsheet. *Id.*

Vectrus argues that evaluation notice 5040 was misleading. The Army sent Vectrus evaluation notice 5040 to communicate the Army's "uncertainty" rating on its proposal for managing many installations on the base concurrently. AR38256. There was an error in evaluation notice 5040; the evaluation narrative was placed in the "deficiencies" column of the spreadsheet (*id.*), when the government meant to put the narrative explanation under the "uncertainty" column (*see* AR41848, Tab 654(c) (sheet 1(a)(1), S:12, noting in a later evaluation round that the evaluation notice was "inadvertently provided to the Offeror as a Deficiency however it was originally intended to be an Uncertainty")). Thus, the narrative stated that Vectrus's "approach requires clarity," but the narrative was under the deficiency column of the spreadsheet. *See* AR38256. A deficiency rating would indicate that the proposal contained a "material failure … that increases the risk of unsuccessful contract performance to an unacceptable level." AR34242-43.

Vectrus had initially proposed a "sub-work center" approach defined by six sub-work centers. AR38256; ECF No. 32 at 17. Vectrus states that because it read evaluation notice 5040 as communicating a deficiency rating, it switched to a new "zonal" approach. ECF No. 32 at 16-18. The zonal approach changed the management structure from six sub-work centers to one main

work center, five zones of responsibility, and one sub-work center. *Id.* at 18; AR41848, Tab 654(c) (sheet 1(a)(1), S:15). Vectrus submitted that revision to the Army. In a subsequent evaluation, the Army reduced Vectrus's rating because the new "[z]onal approach does not provide the same benefit" as the previous sub-work center approach. AR41848, Tab 654(c) (sheet 1(a)(1), S:15); ECF No. 32 at 17-18; *see* AR38256 (evaluation notice 5043 describing the sub-work center approach as a strength).

Vectrus argues that the error in evaluation notice 5040, and the Army's failure to communicate the error to Vectrus prior to award, constituted misleading discussions. ECF No. 32 at 36-37. The government responds that the narrative made clear that the issue identified was only an uncertainty rather than a deficiency. ECF No. 43 at 24-26. The government further argues that Vectrus's response to evaluation notice 5040 shows that it understood that the issue was meant to be listed as an uncertainty. *Id.* at 26-27.

When an agency conducts discussions with offerors, the agency must provide "meaningful discussions that are not misleading." *Greenland Contractors I/S v. United States*, 131 Fed. Cl. 216, 225 (2017) (quotation marks omitted). A discussion is meaningful when it "generally lead[s] offerors into the areas of their proposals requiring amplification or correction." *Advanced Data Concepts, Inc. v. United States*, 43 Fed. Cl. 410, 422 (1999), *aff'd*, 216 F.3d 1054 (Fed. Cir. 2000). An example of a misleading discussion is an "error in communicating a weakness that causes an offeror to revise its proposal." *Cadell Construction Co. v. United States*, 125 Fed. Cl. 30, 45 (2016). "[T]he limited question for the court is whether the discussions that did take place were minimally adequate." *CACI Field Services, Inc. v. United States*, 13 Cl. Ct. 718, 734 (1987), *aff'd*, 854 F.2d 464 (Fed. Cir. 1988).

The Army's communication here was meaningful and not sufficiently misleading to warrant reversal. The Army's narrative description guided Vectrus to areas of its proposal that needed clarification. AR38256 (requesting that Vectrus provide "clarity in order for the Government to evaluate" Vectrus's approach). The narrative mentioned a proposal "inconsistency" and that an approach was "unclear." *Id.* It also indicated how Vectrus could clarify the sub-work-center structure and suggested how Vectrus could explain functional questions, providing enough information for Vectrus to make proposal updates. *Id.*; *see WorldTravelService v. United States*, 49 Fed. Cl. 431, 439-40 (2001) (noting that a meaningful discussion does not require that the agency "spoon-feed an offeror as to each and every item that must be revised, added, or otherwise addressed to improve a proposal" (marks omitted)). Although the Army's placement of the narrative was wrong, and that altered the way Vectrus might have read it, Vectrus has not shown that it was misled, given the content of the narrative. The Army's narrative sufficiently led Vectrus "into the areas of its proposal that required amplification." *See CACI*, 13 Cl. Ct. at 733-34 (determining that the agency conducted meaningful discussions by describing areas of improvement for the offeror even though the agency did not define the issues as deficiencies).

The government also notes that Vectrus had an additional opportunity to regain the strength it was originally assigned under the sub-work center approach. ECF No. 43 at 29-30. In a later round of discussions, the Army told Vectrus why it eliminated the strength (AR42010, Tab 663a.2 (sheet 1(a)(1), H-K:10)) and Vectrus responded (AR42390) but did not take the opportunity to amend its proposal to address the eliminated strength (AR42006).

In sum, Vectrus was not subjected to misleading discussions.

### E. Because the Army acted reasonably, Vectrus is not entitled to a permanent injunction

The Army reasonably chose PAE as the awardee and did not engage in misleading discussions. Because Vectrus has not succeeded on the merits, it is not entitled to injunctive relief. *See PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (noting that a plaintiff "must" succeed on the merits of the case to qualify for injunctive relief).

### F. The court will deny Vectrus's motion for judicial notice as moot and will grant PAE's motion to supplement the administrative record

Vectrus requested that the court take judicial notice of publicly available records relating to PAE's ownership interest in the joint venture DZSP. ECF No. 35. That motion is unopposed. *Id*. At oral argument, the parties agreed that the motion is now moot because the parties have discussed and agreed on PAE's ownership interest in DZSP, and Vectrus has abandoned that aspect of its argument. Thus, the court will deny Vectrus's motion (ECF No. 35) as moot.

PAE filed a motion to supplement the administrative record (ECF No. 42) with two documents (ECF Nos. 41-1, 41-2). That motion is also unopposed. ECF Nos. 42, 49. The court will grant PAE's motion to supplement the administrative record (ECF No. 42) with the two additional documents.

## III. Conclusion

For the reasons stated above, this court **grants** the government's cross-motion for judgment on the administrative record (ECF No. 43) and PAE's cross-motion for judgment on the administrative record (ECF No. 41). The court **denies** Vectrus's motion for judgment on the administrative record and a permanent injunction (ECF No. 32). The court **denies as moot** Vectrus's motion to take judicial notice (ECF No. 35). The court **grants** PAE's motion to supplement the administrative record (ECF No. 42). This is a final, appealable order. The clerk of the court shall enter judgment accordingly.

**IT IS SO ORDERED.**

/s/ Molly R. Silfen
MOLLY R. SILFEN
Judge